**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JACQUELINE BRADLEY, | No. C 07-05186 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 13] |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

**REQUEST BEFORE THE COURT**

Before the Court is plaintiff Jacqueline Bradley's Motion for Summary Judgment (the "Motion") [Docket No. 13], defendant Michael J. Astrue's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (the "Cross-Motion") [Docket No. 19], and Bradley's Reply and Opposition to Defendant's Cross-Motion (the "Reply") [Docket No. 22]. Bradley appeals defendant's decision that she is ineligible for Optional State Supplement ("OSS") payments under the Supplemental Security Income ("SSI") program of Subchapter XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq*. Because the parties agree that Bradley moved from a residence without "cooking and food storage facilities," to a residence with "cooking and food storage facilities," the Court finds defendant correctly determined Bradley was no longer eligible for a monthly "no cooking facility" supplemental payment. The Court thus DENIES the Motion, GRANTS the Cross-Motion, and AFFIRMS defendant's decision.

**BACKGROUND**

**I.    Factual Developments**

Bradley is 60 years old, allegedly visually impaired, and receives disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et. seq.*[1] Docket No. 12 (Admin. R. ("AR")) at 25, 81. She alleges that due to her visual impairment, she cannot use a stove

---
[1]    The Record does not indicate Bradley's specific disability.

or otherwise make full use of "cooking and food storage facilities." AR at 28. She can, however, use a microwave. *Id.*

Before April 2004, Bradley lived in a shelter in which she shared kitchen facilities. AR at 28. There she had access at all times to a microwave for all meals. *Id.* The shelter's kitchen, however, was available only under the supervision of a staff member, and only one to three times per week, per resident. *Id.* At the shelter, Bradley qualified for monthly OSS payments. AR at 28, 42. In April 2004, she moved into an apartment which had a stove and refrigerator. AR at 28, 200. She lived alone, AR at 200, but received California In-Home Support Services ("CIHSS"), which bought and delivered her groceries, helped her prepare meals, and cleaned up after she ate. AR at 28, 44-46. **II. Procedural Developments**

On October 14, 2004, the SSA sent Bradley a letter advising her that she had to make an appointment for a meeting regarding her move and her SSI benefits. AR at 34. On or about October 19, 2004, Bradley met with the SSA, which learned that her new apartment had a working stove and refrigerator. AR at 35, 42. On October 25, 2004, the SSA notified Bradley that because she now had a kitchen, she was no longer eligible for a monthly "no cooking facility" OSS payment under SSI, and that her payments would cease in December 2004. *Id.* at 36, 38, 42.

On November 8, 2004, Bradley requested the SSA reconsider its decision and an informal telephone conference. AR at 36-38. During the conference, on December 14, 2007, Bradley explained she could not use the stove or refrigerator without assistance, and thus she did not think she should lose the "no cooking facility" payment. AR at 41. The SSA then sent her a letter denying her request and explaining that as she had a working stove and refrigerator, she was not entitled to a "no cooking facility" supplement, regardless of her inability to use them. AR at 38. The letter further explained that as her OSS payment was the only benefit for which she was eligible under SSI, she would no longer receive any SSI benefits under Title XVI, though she would continue to receive her disability benefits under Title II. *Id.*

On February 9, 2005, Bradley requested a hearing with an administrative law judge ("ALJ"). AR at 43. On February 22, 2007, an ALJ noted the SSA has not enacted regulations regarding the "no cooking facility" supplemental payment. AR at 27. Nonetheless, he noted the SSA's Program

1  Operations Manual System ("POMS"), which contains guidance on the administration of the SSA's
2  programs, addresses this issue. AR at 27-28. He also noted that under paragraph B of section SI
3  01415.039 of the POMS, that California provides different levels of monthly payments depending
4  on a recipient's living arrangements. AR at 28. Thus, category "A" is titled "Independent Living
5  with Cooking Facilities," and includes an individual who "[l]ives in his/her own household . . . and
6  has cooking and food storage facilities *or is provided meals as part of the living arrangement*[.]" *Id.*
7  (emphasis in ALJ's decision). In contrast, category "C" is titled "Independent Living Without
8  Cooking Facilities," and includes a disabled individual "who is neither provided any meals nor has
9  access to adequate cooking/food storage facilities as part of a living arrangement." *Id.* This
10 category includes a person who has access to a communal kitchen, but not every day. *Id.* The ALJ
11 noted that the monthly category "C" benefit was higher than the category "A" benefit, which for
12 calendar 2004 was $872 and $790, respectively. *Id.* Although he noted that he was not bound by
13 the POMS, he did find that by moving, Bradley had shifted from category "C" to category "A," and
14 was thus not entitled to a "no cooking facility" supplement, regardless of her alleged inability to use
15 her cooking facilities. *Id.* at 28-30.

16 On March 23, 2007, Bradley requested the SSA's Appeals Council to review the ALJ's
17 decision. AR at 11-12. On August 7, 2007, the Council denied her request, AR at 8, which denial
18 was re-noticed on August 29, 2007, AR at 3. On October 10, 2007, Bradley appealed the ALJ's
19 decision to this Court. *See* Docket No. 1. On March 14, 2008, Bradley filed her motion for
20 summary judgment. *See* Docket No. 13. On May 9, 2008, the SSA filed its cross-motion and
21 opposition, *see* Docket No. 19, and Bradley replied on June 24, 2008, *see* Docket No. 22.

**LEGAL STANDARD**

**I.    Standard of Review**

24 The "substantial evidence" standard governs a district court's review of a final decision made
25 by the Commissioner of the SSA. 42 U.S.C. § 405(g); *Udd v. Massanari*, 245 F.3d 1096, 1100 (9th
26 Cir. 2001); *Bradley v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997). When the Appeals Council
27 declines to review an ALJ's decision, it stands as the Commissioner's final decision. *Bass v. Soc.*
28 *Sec. Admin.*, 872 F.2d 832, 832 (9th Cir. 1989).

3

A court may reverse an ALJ if his or her findings "are based on legal error or are not supported by substantial evidence." *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Bradley*, 110 F.2d at 1483 (quoting *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "Substantial evidence is 'more than a mere scintilla,' but 'less than a preponderance.' " *Bradley*, 110 F.2d at 1483 (quoting *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted)). "If the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision [a court] must affirm." *McCartey*, 298 F.3d at 1075.

**II.     Optional State Supplement (OSS) Payments under the Supplemental Security Income (SSI) Program of Title XVI of the Act**

Under Title II of the Act, the SSA provides benefits to survivors, the aged, and the disabled. *See* 42 U.S.C. § 401 *et. seq.* Under Title XVI of the Act, the SSA provides supplemental security income ("SSI") to eligible disabled or blind individuals. *See* 42 U.S.C. § 1381 *et. seq*. Also under Title XVI, the SSA may reach an agreement with a state to administer a program to provide Optional State Supplement ("OSS") payments for persons eligible for benefits under Title II or Title XVI. *See* 42 U.S.C. §§ 902(a)(5), 1382(e), 1382(g), 1383; 20 C.F.R. § 416.2001. The SSA has such an agreement with California. *See* POMS § SI 01415.039(A)-(B). The purpose of OSS payments is to ensure certain beneficiaries receive up to a certain minimum level of financial assistance per month in recognition of the variations in living costs from one state to another and for these individuals' special needs. POMS § SI 01401.001. States may condition these OSS payments on an individual's living arrangement. *Id.*

SSI benefits, including OSS payments, are subject to "offset." *See* 42 U.S.C. §§ 404 *et. seq.*, 1320(a)(6), 1381, 1383; 20 C.F.R. § 416.2025. That is, SSI payments only supplement an eligible individual's "federal benefit rate" up to that individual's "predetermined benefit level." *See* 20 C.F.R. §§ 416.420, 416.2025. For example, if an individual eligible for SSI benefits already receives Title II or Title XVI benefits equal to or greater than their predetermined benefit rate, then he or she is ineligible for additional OSS payments. *Id.* If, however, an individual eligible for SSI

4

benefits receives Title II or Title XVI benefits at less than their "predetermined benefit rate," then he or she is eligible for OSS payments, if he or she meets additional qualifications for them. *Id.*

**III.     The SSA's Program Operations Manual System (POMS)**

Generally, an individual's eligibility for Social Security benefits is governed by the Social Security Act (the "Act"), 42 U.S.C. § 401 *et. seq.*, and Title 28 of the Code of Federal Regulations (the "C.F.R."). *Briggs v. Sullivan*, 886 F.2d 1132, 1134 (9th Cir. 1989). The SSA has also created a Program Operations Manual System ("POMS"), which contains guidance on the administration of its various programs. *Id.* at 1135. The Act and the C.F.R. are binding on the SSA, but the POMS are not. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). The POMS compiles directives designed to assist the SSA in implementing the Act and the C.F.R., and to the extent the former conflict with the latter two, they are void. *Warre v. Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006); *Briggs*, 886 F.2d at 1144. Nonetheless, the POMS is persuasive, and the SSA's interpretation of it will not be questioned by a court of law. *See Warre*, 439 F.3d at 1005.

**ANALYSIS**

Bradley argues the ALJ improperly found she shifted from category "C" to category "A" when she moved from the shelter to her apartment, in April 2004. Mot. at 2. Specifically, she asserts that although her apartment has cooking facilities, she cannot use them due to her alleged visual impairment. *See id.* Thus, she asserts she essentially has no cooking facilities. *Id.* The SSA asserts there was substantial evidence to support the ALJ's determination that Bradley shifted from category "C" to category "A," when she moved in April 2004. Cr.-Mot. at 3-4. To resolve this dispute the Court turns to paragraph B of section SI 01415.039 of the POMS.

To qualify for the higher monthly OSS payment under category "C," Bradley must fall under one or more of five possible sub-categories. A disabled person is eligible under category "C.1," if their "[i]mmediate living quarters *do not* have cooking and food storage facilities with which the individual[] or another person (who is responsible for preparing the individual's[] meals) can prepare meals on a daily basis." POMS § SI 01415.039(B)(1), code C.1 (emphasis added). A working refrigerator and a stove, however, constitute "adequate cooking and food storage facilities." POMS § SI 01415.039(B)(1). In contrast, a refrigerator and a microwave do not. *Id.* Bradley's

apartment has a working refrigerator and a stove. Thus, she has "adequate cooking and food storage facilities." Further, CIHSS uses these facilities to prepare her meals. Thus, after moving, Bradley was ineligible for OSS payments under category "C.1."

Turning to category "C.2," a disabled person is eligible under it, if he or she "*[d]oes not* have access to adequate cooking and food storage facilities as part of the living arrangement (including cooking and food storage facilities which are outside the immediate living quarters) for the purpose of preparing meals or having them prepared on their behalf." POMS § SI 01415.039(B)(1), code C.2 (emphasis added). Clearly, Bradley has access to the working refrigerator and stove in her apartment, which CIHSS uses to prepare meals on her behalf. Thus, after moving, she was ineligible for OSS payments under category "C.2."

Category "C.3" applies to persons in boarding houses, category "C.4" applies to persons living with friends or relatives, and category "C.5" applies to person living in a "room and board facility." *Id.*, code C.3-.5. There was no evidence before the ALJ to support finding Bradley fell within these three categories. Instead, the evidence before the ALJ was that CIHSS used the working refrigerator and stove in Bradley's apartment to prepare her meals. As such, the ALJ correctly determined that after moving to her apartment, she was ineligible for a monthly OSS payment, i.e., a "no cooking facility" supplement, under category "C."

The next question is whether substantial evidence supported the ALJ's determination that Bradley was eligible for benefits under category "A." To qualify for a monthly OSS payment under category "A," Bradley must fall under one or more of five possible sub-categories. A person is eligible under category "A.1" if he or she "[l]ives in his/her own household, as defined for Federal living arrangement ["]A["] purposes, and has cooking and food storage facilities or is provided meals as part of the living arrangement[.]" *Id.*, code A.1. A person lives under "Federal living arrangement 'A,' " inter alia, if they (1) live in their own household, whether or not they pay their own housing or food costs; or (2) live alone. The evidence before the ALJ shows that Bradley lived in her own apartment, with a working refrigerator and stove, which CIHSS used to prepare her meals. Thus, there was substantial evidence to support the ALJ finding Bradley was eligible for a monthly OSS payment under category "A.1."

6

Bradley does not challenge the SSA's set-off determination. That is, she does not challenge its determination that under category "A," her level of monthly SSI benefits became lower than her existing Title II benefits, resulting in no net monthly SSI benefits. Rather, she challenges the SSA's determination that she belongs under category "A," rather than category "C." As already noted, Bradley argues this is because her alleged visual impairment prevents her from using her apartment's kitchen facilities. Thus, she claims that she effectively has no kitchen facilities, and is thus eligible for OSS payments under category "C." The ALJ correctly noted, however, that category "C" does not turn on whether one can *use* kitchen facilities, but whether one *has* them, POMS § SI 01415.039(B)(1), code C.1, or *has access* to them, *id.* code C.2-.4.[2] AR at 29.

The Court further finds that the ALJ's conclusion is buttressed by category "A.4" which states a person qualifies under category "A" if he or she "[i]s a blind individual who lives in an independent living arrangement *with or without cooking and food storage facilities*[.]" POMS § SA 01415.039(B)(1), code A.4 (emphasis added). This category absolutely rebuts Bradley's visual impairment argument. Were she in fact "blind," and living in her own apartment, as she does, she would fall under category "A," regardless of the presence of kitchen facilities. While she would be eligible for a higher payment under category "A.4," than she is currently eligible for under category "A.1," POMS § SI 01415.039(B)(2)(a), the issue before the ALJ was not whether Bradley was "blind" under Titles II or XVI, but whether or not her apartment contained a working refrigerator or stove. If Bradley had been classified at one time by the SSA as "blind," under Title II or XVI, and thus incorrectly classified for purposes of OSS payments, it was her burden to bring forth this evidence and demonstrate the SSA's internal cross-referencing error to the ALJ. Bradley did not do this, however.[3]

///

---

[2] Category "C.5" turns on whether one who lives in a room and board facility does not *contract for meals*, and not on the issue of whether the boarder has or has *access* to kitchen facilities. This category, however, is inapplicable to this matter.

[3] In fact, as the ALJ noted, her conduct during her hearing, such as reading the ALJ's nameplate, and maneuvering about the hearing room without assistance, AR at 29 & n.5, suggested she was not "blind," per se.

Considering the record as a whole, the Court finds the ALJ applied the law correctly, *McCartey*, 298 F.3d at 1075, and that a reasonable person could not help but find the evidence adequate to support his conclusions, *Bradley*, 110 F.2d at 1483.  In this case, "the record considered as a whole" can only reasonably support affirming the ALJ's decision, so the Court does. *McCartey*, 298 F.3d at 1075.

## CONCLUSION

Accordingly, the Court DENIES plaintiff's Motion for Summary Judgment [Docket No. 13], GRANTS defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment [Docket No. 19], and AFFIRMS the defendant's decision.

IT IS SO ORDERED.

December 15, 2008

Saundra Brown Armstrong
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE BRADLEY,<br><br>        Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY et al,<br><br>        Defendant. | Case Number: CV07-05186 SBA<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 16, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jacqueline Bradley
P.O. Box 73
Berkeley, CA 94701-0073

Dated: December 16, 2008

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk